UNITED STATES OF AMERICA
UNITES STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARLOS RODRIGUEZ-MILIAN<br><br>PLAINTIFF<br><br>V.<br><br>UNITED STATES OF AMERICA<br>CUSTOMS AND BORDER PROTECTION<br>IMMIGRATION & CUSTOMS ENFORCEMENT<br>AGENT ABEL NAZER (ICE)<br>AGENTS "A", "B" & "C"<br><br>DEFENDANTS | CIVIL NO:<br><br><br>CIVIL RIGHTS VIOLATIONS<br>UNLAWFUL ARREST AND DETENTION<br>UNLAWFUL IMPRISONMENT<br>(TRIAL BY JURY DEMANDED) |

## COMPLAINT

TO THE HONORABLE COURT:

COMES NOW THE AFOREMENTIONED PLAINTIFF REPRESENTED THROUGH RGE UNDERSIGNING COUNSEL AND RESPECTFULLY STATES, ALLEGES AND PRAYS:

1. This Honorable Court has jurisdiction and venue pursuant to 28 U.S.C. § 1331, 1343(a)(3), and/or 1346(b) (federal question) because the instant complaint rises under the First, Fourth, Fifth, and Sixth Amendment to the Constitution of the United States (1791) as interpreted in the landmark case of <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S 388 (1971), and its progeny, and/or 42 U.S.C. §1983. Venue is proper in this district pursuant to 28 USC 1391(b) and 1391(c).

2. The plaintiff is a United States citizen and resident of Bayamón, Puerto Rico.

3. The defendants are the United States of America, its agencies and agents as captioned in this complaint are sued in their direct and/or official capacities.

4. On September 12th, 2012, on or about 4 pm, the plaintiff was arriving from the Dominican Republic landing at Isla Grande Airport.

5. When the plaintiff was clearing through customs, several Immigration and Customs Enforcement (ICE) agents and Customs and Border Protection

    (CBP) agents approached the plaintiff and asked him to accompany them.

6. Also present during the incident were ICE and CBP supervisors, including Mr. Arturo Romero, supervisor.

7. The plaintiff was asked questions regarding certain Chinese citizens allegedly committing unlawful acts against the United States in the Dominican Republic. Agent Nazer was questioning the plaintiff in a hostile and aggressive manner.

8. The plaintiff answered repeatedly that he did knot know any information about these Chinese persons.

9. The plaintiff was then threatened by agent Abel Nazer, and told by this agent that if the plaintiff did not cooperate by giving certain information that the agent would place the plaintiff under arrest and imprison the plaintiff until the plaintiff decided to cooperate with that information.

10. The plaintiff reiterated his lack of knowledge regarding the subject stated above and expressed opposition to the interrogation.

11. Plaintiff repeatedly asked to speak to an attorney and was ignored by the agents. Plaintiff informed and identified the undersigned as his counsel but was not able to contact the undersigned until the incident was over and the plaintiff was out of the premises.

12. Agent Nazer abusively interrogated the plaintiff for about an hour repeating the same questions over and over about the Chinese, prior travels, personal and educational background, and other personal matters.

13. In an act of retaliation for the plaintiff's exercise of his expressions and free speech that he had no knowledge of the Chinese and in an effort to infringe on plaintiff's constitutional rights to deny any wrongdoing and not to answer, and his right to access to counsel agent Nazer proceeded to place the plaintiff in handcuffs, without any explanation, and informed the plaintiffs he was under arrest. Obviously, the unlawful arrest chilled the plaintiff's First amendment rights and his constitutional right to speak to his attorney.

14. Agent Nazer did not inform the plaintiff the reasons, charges, or cause

giving rise to the plaintiff's arrest, nor any other of the agents present.

15. Plaintiff was not allowed access to counsel and remained incommunicado throughout the incident.

16. Agent Nazer placed the plaintiff in handcuffs taking him into custody into a holding cell while the plaintiff was jailed for several hours.

17. The plaintiff remained in handcuffs while held in a cell for several hours. The plaintiff asked but was not allowed to use the restroom and was not allowed water or food.

18. The plaintiff was not free to leave, detained at all times during the incident and the property that had been seized from the plaintiff was during that time still in the possession of the government agents.

19. Agent Nazer came back after that time had passed and took plaintiff out of his holding cell, removed the handcuffs previously placed by agent Nazer, and told the plaintiff that he was releasing the plaintiff because the agent did not have any evidence to charge the plaintiff with, but that if the agent had the evidence he was allegedly seeking, that the agent would charge the plaintiff no doubt.

20. The agent continued to say that the agent was going to make sure that the plaintiff's pilot license be revoked, and that the agent was going to "personally" make sure that the plaintiff would be charged with a crime, and that the agent was going to take the plaintiff's alleged matter personal. "This is personal." Agent Abel Nazer repeatedly told the plaintiff in front of the other agents and supervisors while the plaintiff was claiming his belongings and exiting the law enforcement office.

21. The plaintiff was never informed he was free to leave until after his release.

22. Given the above, agent Abel Nazer acted with excessive use of force, and in violation of well established law enforcement policy by threatening to arrest the plaintiff if he did not tell the agent the information the agent was attempting to obtain from the plaintiff.

23. Furthermore, agent Abel Nazer acted with excessive use of force, and in

violation of well established law enforcement policy by placing the plaintiff under arrest, while handcuffing the plaintiff when in fact the agent admittedly had no grounds, reason, or cause to believe that plaintiff had committed any crime whatsoever.

24. Agent Abel Nazer, and others unknown, acted abusively and with excessive use of force, in violation of well established law enforcement policy and procedure by unlawfully arresting the plaintiff simply because the plaintiff stated he had no knowledge or information that the agent was attempting to learn from the plaintiff.

25. Agent Abel Nazer, *inter alia*, acted with excessive use of force, and in violation of well established law enforcement policy, law, and procedure by imprisoning plaintiff in a cell for several hours with no probable cause whatsoever.

26. The other agents present, whose identities are presently unknown to the plaintiff allowed others to act, failed to prevent, and/or acted abusively, unlawfully, and in clear violation of the plaintiff's civil rights by allowing agent Nazer to act as stated above and failed to intervene and stop agent Nazer's unlawful and excessive conduct.

27. The supervisors present failed to act to prevent, stop, and/or remedy agent Nazer's abusive, unlawful, and excessive conduct in violation of plaintiff's civil rights.

28. The defendants, all U.S. government agents and agencies, acted in deliberate and wanton disregard for the plaintiff's civil rights and allowed excessive use of force, abuse, and violation of the plaintiff's basic civil and human rights.

29. The plaintiff suffered abuse, mistreatment, public humiliation, and embarrassment at the hands of government agents, all without cause or reason, all of which amounted to intentional infliction of emotional distress to the plaintiffs at the hands of federal government officials.

30. The defendants failed to train and to adequately supervise the agents in a

   manner so as to prevent the incident giving rise to this complaint.

31. At no point did the plaintiff act in any manner as to provoke the abusive, harassing, unlawful, and humiliating treatment for which the plaintiff was subjected to in clear violation of the plaintiff's civil rights. The plaintiff acted in a polite, calm, and respectful manner and demeanor, and responded to all answerable questions truthfully and to the best of his abilities.

32. The plaintiff never received an apology from anyone involving his unlawful detention, arrest, incarceration, mistreatment or abusive and aggressive interrogations.

33. The United States and its agencies, agents, and defendants are liable to the plaintiff for compensatory relief in the form of damages for an amount no less than one million dollars ($1,000,000.00) for the unconstitutional search and seizure, the excessive use of force, the unlawful arrest and detention, the unlawful and unnecessary and extended restraint, unlawful incarceration, and unlawful imprisonment, all in violation of the plaintiff's First, Fourth, Fifth, and/or Sixth Amendment rights guaranteed by the Constitution of the United States.

34. Further, the plaintiff seeks declaratory relief stating that he cannot be harassed, persecuted, unlawfully arrested, and imprisoned because his name is Carlos Rodriguez, a common Hispanic name subject to unwarranted and unlawful arrests, detentions, and imprisonment of U.S. citizens at airports all over the United States, especially when any U.S. citizen named Carlos Rodriguez is arriving from international flights.

35. This Honorable Court has the authority to award costs and attorney's fees pursuant to 42 U.S.C. § 1988 and/or 28 U.S.C. § 2412.

WHEREFORE, given the above complaint, the plaintiff respectfully requests that this complaint and the relief sought be GRANTED.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on September 17th, 2012.

/s/ Hector L Barreto-Cintron<br>
Hector L. Barreto-Cintron, Esq.<br>
USDC No. 220808<br>
PO Box 21476<br>
San Juan PR 00931<br>
T/F (787) 539-9000<br>
hectorbarretolaw@gmail.com